OPINION
{¶ 1} Plaintiff-appellant, John Varecka, appeals from the Warren County Court of Common Pleas' decision granting summary judgment in favor of defendant-appellee, Royal Insurance Company of America ("Royal"), with respect to Varecka's claim for uninsured/underinsured motorist ("UM/UIM") coverage under his employer's motor vehicle insurance policy with Royal.
 {¶ 2} In July 1998, Varecka was injured in an automobile accident while riding as a passenger in a vehicle driven by his co-worker, Michael Bugman. According to both Varecka and Bugman, the accident occurred when a second vehicle crossed the centerline, forcing Bugman to swerve off the road, where he collided with a utility pole. The accident happened on Claude Thomas Road in Franklin, Ohio. Bugman was cited by the Franklin Police Department for failure to maintain control of his vehicle. The second vehicle's driver was neither identified nor found.
 {¶ 3} At the time of the accident, Varecka and Bugman were employed by the Eichleay Corporation. Eichleay had a motor vehicle liability insurance policy with Royal. The policy lists a number of individuals and corporate entities as named insureds, and gives Pittsburgh, Pennsylvania, as the named insureds' address.
 {¶ 4} In April 1999, Varecka settled his claim against Bugman for $25,000, the limits of Bugman's policy. In exchange, Varecka provided Bugman with a full release from liability.
 {¶ 5} In July 2000, Varecka filed a complaint in the Warren County Common Pleas Court against a "John Doe defendant," i.e., the "phantom" vehicle's unidentified driver, and Royal. Varecka asserted that he was entitled to UM/UIM coverage under Eichleay's policy with Royal pursuant to the decision in Scott-Pontzer v. Liberty Mut. Fire Ins. Co.,85 Ohio St.3d 660, 1999-Ohio-292. Bugman was later joined to the action as a third-party defendant at Royal's request.
 {¶ 6} The trial court granted summary judgment to Bugman on the basis of the release that Varecka had given him. The trial court also granted summary judgment to Royal, finding that Pennsylvania law, rather than Ohio law, applied in this case, and that, as a result, Scott-Ponzer
did not apply, because Pennsylvania courts have considered and rejected the rationale underlying that decision. The trial court also granted summary judgment to Royal on the alternative ground that Varecka breached the terms of the contract by settling with and releasing Bugman without Royal's consent, thereby relieving Royal of its duty to provide Varecka with UM/UIM coverage.
 {¶ 7} Varecka appeals from the trial court's grant of summary judgment in favor of Royal and raises two assignments of error.
Assignment of Error No. 1
 {¶ 8} "The trial court erred when it failed to recognize Ohio law as governing plaintiff John Varecka's rights under the automobile liabiltiy policy issued to Eichleay by Royal Insurance Company."
 {¶ 9} Varecka argues that the trial court erred in granting summary judgment to Royal upon finding that Pennsylvania law, rather than Ohio law, applied to this case, and, therefore, he was not covered by Eichleay's policy with Royal.
 {¶ 10} Summary judgment should be granted only when the moving party demonstrates that (1) there is no genuine issue of material fact remaining to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence presented that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64.
 {¶ 11} First, Varecka argues that it was unnecessary for the trial court to engage in a choice of law analysis in this case. In support, Varecka notes that former R.C. 3937.18(A) requires all automobile liability or motor vehicle liability insurance policies delivered or issued for delivery in this state, with respect to any motor vehicle registered or principally garaged in this state, to provide the insured with UM/UIM coverage. Varecka asserts that former R.C. 3937.18 applies to the motor vehicle policy at issue here, and then asserts thatScott-Pontzer also applies because "[t]he case is based on an interpretation of the UM/UIM statute, and is therefore just as applicable as the statute itself." Varecka concludes by arguing that "the fact that the contract was made in Pennsylvania is of little consequence since R.C. 3937.18 applies regardless of where the policy was issued." We find this argument unpersuasive.
 {¶ 12} The fact that Eichleay's vehicles may be subject to the requirements of former R.C. 3937.18 does not resolve the issue of whetherScott-Pontzer should apply. Whether former R.C. 3937.18 applies is irrelevant because Royal's policy does, in fact, provide UM/UIM coverage. The only remaining relevant issue is whether Scott-Pontzer
should, in fact, apply. In order to decide that question, it must be determined whether Ohio or Pennsylvania law should apply, and that, in turn, requires resort to a choice of law analysis, to which we now turn.
 {¶ 13} "Questions involving the nature and extent of the parties' rights and duties under an insurance contract's underinsured motorist provisions shall be determined by the law of the state selected by applying the rules in Sections 187 and 188 of the Restatement of the Law 2d, Conflict of Laws (1971)." Ohayon v. Safeco Ins. Co. of Illinois,91 Ohio St.3d 474, 2001-Ohio-100, paragraph two of the syllabus, applying 1 Restatement of the Law 2d, Conflict of Laws (1971), Section 205. "Section 187 provides that, subject to very limited exceptions, the law of the state chosen by the parties to a contract will govern their contractual rights and duties." Id. at 477. "Section 188 provides that, in the absence of an effective choice of law by the parties, their rights and duties under the contract are determined by the law of the state that, with respect to that issue, has `the most significant relationship to the transaction and the parties.'" Id. at 477, quoting the Restatement at 575, Section 188(1).
 {¶ 14} In determining which state has "the most significant relationship to the transaction and the parties," a court should consider "the place of contracting, the place of negotiation, the place of performance, the location of the subject matter, and the domicile, residence, nationality, place of incorporation, and place of business of the parties." Id. at 477, citing Section 188(2)(a) through (d) of the Restatement. Focusing on these factors "will often correspond with the Restatement's view that the rights created by an insurance contract should be determined `by the local law of the state which the parties understood was to be the principal location of the insured risk duringthe term of the policy, unless with respect to the particular issue, some other state has a more significant relationship * * * to the transaction and the parties.'" (Emphasis sic.) Id. at 479, quoting the Restatement at 610, Section 193. "`[I]n the case of an automobile liability policy, the parties will usually know beforehand where the automobile will be garaged at least during most of the period in question.' Id. at 611, Comment b. The principal location of the insured risk described in Section 193 neatly corresponds with one of Section 188's enumerated factors — the location of the subject matter of the contract." (Emphasis sic.) Id. at 479-480.
 {¶ 15} In this case, Royal and Eichleay did not choose a particular forum's law to be applied if a controversy arose under the provisions of their motor vehicle liability insurance contract; therefore, the law of the state having the most significant relationship to the transaction and the parties must be applied.
 {¶ 16} Applying the factors listed in Section 188(2)(a) through (d) of the Restatement, we conclude that Pennsylvania has the most significant relationship to the transaction and therefore Pennsylvania law must be applied in this case.
 {¶ 17} The place of contracting and negotiation for the insurance policy at issue in this case is Pennsylvania. Eichleay's place of performance is Pennsylvania, since that is where it pays its insurance premiums. As the trial court pointed out, Royal's place of performance could be anywhere, since its performance is to provide liability and UM/UIM coverage.
 {¶ 18} The critical factor in this type of case is the principal location of the insured risk, which corresponds to the location of the subject matter of the contract. Varecka argues that the principal location of the insured risk is Ohio, because Eichleay had at least twelve motor vehicles that were principally garaged in Ohio during the policy period in question. Varecka also argues that "Royal should have known that the vehicles would be in many states."
 {¶ 19} However, there is no evidence in the record to show that Royal was aware that any of Eichleay's vehicles were being principally garaged in Ohio. The insurance contract between Royal and Eichleay contained endorsements showing that 144 vehicles were being garaged in Pennsylvania, with an additional eleven and six vehicles being garaged in California and Indiana, respectively. There were no endorsements to the insurance contract showing that any of the vehicles were being garaged in Ohio, despite the fact that at least twelve of Eichleay's vehicles were garaged there during the policy period in question. While it is clear that Eichleay knew that at least twelve of its vehicles were being garaged in Ohio, Royal was only aware that Eichleay was garaging the vast majority of its vehicles in Pennsylvania, with only a small handful being garaged in other states (California and Indiana, but not Ohio). Furthermore, while Royal can be charged with knowing that the vehicles would be garaged, on occasion, in states other than Pennsylvania, California and Indiana, Royal cannot be charged with knowing that twelve vehicles would be principally garaged in Ohio.
 {¶ 20} Under these circumstances it cannot be said that Royal understood that Ohio was to be the principal location of the insured risk during the term of the policy. Instead, the evidence compels the conclusion that Royal understood that, aside from Eichleay's vehicles in California and Indiana, the principal location of the insured risk during the term of the policy was Pennsylvania, not Ohio. Consequently, the trial court did not err in applying Pennsylvania law, rather than Ohio law, to determine the parties' rights and responsibilities under the contract.
 {¶ 21} Varecka's first assignment of error is overruled.
Assignment of Error No. 2
 {¶ 22} "The trial court erred when it found that John Varecka breached his contract of insurance with Royal by releasing Michael Bugman under new York state's no-fault law."
 {¶ 23} In light of our disposition of Royal's first assignment of error, this assignment of error has been rendered moot. See App.R. 12(A)(1)(c).
 {¶ 24} Accordingly, Varecka's second assignment of error is overruled.
 {¶ 25} The trial court's judgment is affirmed.
POWELL and VALEN, JJ., concur.